IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CAMERON RAY BYRD, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:10-CV-549-Y |
| | § | |
| RICK THALER, DIRECTOR, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Cameron Ray Byrd, TDCJ-ID # 1434544, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Cuero, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. Factual and Procedural History

In January 2007 petitioner was charged by indictment in the 355th Judicial District Court of Hood County, Texas, with felony driving while intoxicated, evading arrest using a vehicle, and unauthorized use of a motor vehicle. (Clerk's R. at 5-7) The indictment also included two enhancement paragraphs alleging two prior felony convictions for burglary of a habitation. (*Id.* at 7) On March 19, 2007, petitioner entered a plea of guilty to each offense and true to the enhancement paragraphs, and his punishment trial commenced. On March 20, after receiving evidence and instructions, the jury found petitioner guilty, true to the enhancement paragraphs, assessed his punishment at the maximum twenty years' confinement in each case, and found he used or exhibited a deadly weapon during commission of the offenses. (*Id.* at 21, 26, 30) Petitioner filed a motion for new trial and sought direct review, challenging the deadly weapon finding, to no avail. *Byrd v. Texas*, No. 2-07-167-CR, 2008 WL 4053000, slip op. (Tex. App–Fort Worth Aug. 29, 2008) (not designated for publication); *Byrd v. Texas*, PDR No. 1467-08. Petitioner also filed a state application for writ of habeas corpus, raising one or more of the claims presented herein, which was denied by the Texas Court of Criminal Appeals without written order. *Ex parte Byrd*, Appl. No. WR-73,783-01, at cover. This federal petition for writ of habeas corpus followed.

The state appellate court summarized the relevant facts as follows:

> On August 19, 2006, Byrd stole a 1995 Mercury Cougar from the parking lot of a Sonic drive-in restaurant in Hood County, Texas. A witness saw Byrd recklessly drive away in the car and immediately called 911. Byrd fled from the responding police officers, resulting in a police chase through multiple cities and at speeds up to 115 miles per hour. Law enforcement officers laid spike strips in two separate locations in an attempt to end the dangerous car chase. Byrd ran over both spike strips but continued driving for approximately three more miles before stopping the car. Byrd stopped the car in a mobile home park and fled on foot, hiding from the officers underneath a mobile home. The officers found Byrd, pulled him out from

underneath the mobile home, and made the arrest. No one was injured during the chase.

The indictment included enhancement paragraphs based on Byrd's prior convictions, but it did not allege that Byrd used a deadly weapon during the commission of the charged offenses. On February 22, 2007, the State faxed to Byrd's defense counsel a notice of intent to seek a deadly weapon finding. On March 7, 2007, the State faxed a second letter to counsel, reminding him of the notice of intent letter faxed on February 22. The State did not file either letter with the trial court before trial commenced, nor did it specify in either letter the exact nature of the alleged deadly weapon.

On March 19, 2007, during voir dire, the State addressed three times the issue concerning the use of a car as a deadly weapon. After the jury was sworn in, the trial court admonished Byrd on his guilty pleas and specifically told Byrd that the State was seeking a deadly weapon finding. The trial court asked Byrd if he understood that the State was seeking a deadly weapon finding and the resulting ramifications, if proven. Byrd responded that he understood the admonishments and, with that knowledge, stated that he still desired to plead guilty. The trial on punishment then commenced.

At the conclusion of the first day of the punishment trial, counsel objected to any evidence regarding a deadly weapon finding because, at that time, the State had not filed with the trial court a notice of intent to seek a deadly weapon finding. Counsel also had case law prepared to submit to the trial court on the notice issue. The State responded by asserting that it had faxed counsel a notice of intent and sent a subsequent fax to counsel, reminding him of the initial notice. The trial court overruled counsel's objection but agreed to look at counsel's cases and revisit the issue if necessary.

At the beginning of the second day of the punishment trial, the State filed with the court a notice of intent to seek a deadly weapon finding, specifically stating that the deadly weapon was the 1995 Mercury Cougar. The State attached both letters that were faxed to counsel as exhibits to the notice of intent. The trial court stated that it had read the cases provided by counsel on the previous day and had also conducted additional research on the issue. Based on its research, the trial court concluded that the State had given notice to Byrd in "some form," referencing the two faxed letters to counsel. Counsel made no objection at that time to the filing of the notice of intent. Counsel did object, however, at the close of the evidence, stating that the State had made an untimely filing and that the faxed letters were not specific

3

as to the nature of the deadly weapon. At no point did counsel request a continuance in response to the deadly weapon allegation.

The trial court attached to the jury charge the deadly weapon special issue, and the jury found that Byrd had used the vehicle as a deadly weapon during the commission of the charged offenses. The jury assessed punishment at twenty years' confinement on each count in the indictment, and the trial court sentenced Byrd accordingly.

*Byrd*, slip op. at *1-2 (footnotes omitted).

### D. ISSUES

Petitioner raises ten grounds for habeas relief, wherein he claims he received ineffective assistance of trial counsel (grounds one through four, six, and seven), the trial court abused its discretion (grounds five and nine), his plea was involuntary (ground eight), and his right to due process was violated (ground ten). (Pet. at 7-8)

### E. EXHAUSTION AND PROCEDURAL DEFAULT

Respondent does not believe petitioner's claims are unexhausted, time barred, or subject to the successive petition bar. (Resp't Ans. at 6)

### F. DISCUSSION

#### *1. Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts

4

in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a legal conclusion in direct conflict with a prior decision of the Supreme Court or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *See Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[1]; *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson*, 132 F.3d 162, 183 (5th Cir. 1997).

---

[1] The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

## 2. *Voluntariness of Guilty Plea and Due Process*

Petitioner claims his plea was involuntary because the indictment contained no "deadly weapon language" and he never pleaded "guilty" or "true" to the deadly weapon issue. (Pet. at 7B) He further claims the state violated his right to due process by failing to provide sufficient, timely and proper written notice of its intent to allege an affirmative deadly weapon finding. (Pet. at 8) The state appellate court, relying on state law, addressed these issues as follows:

> Byrd argues that he was deprived of his constitutional right to due process and due course of law under the federal and Texas constitutions because the State filed an untimely, improper, and insufficient notice of intent to seek a deadly weapon finding.
>
> A defendant is entitled to notice that the State will seek an affirmative finding that a deadly weapon was used during the commission of the charged crime. This notice is firmly rooted in fundamental precepts of due process and due course of law. A defendant has the right to be informed, at a bare minimum, that a particular proceeding, over and above the determination of guilt and sentencing, will occur, which may operate to further diminish the accused's liberty interest. The court of criminal appeals has never held what constitutes timely notice in this context. We note, however, that the Court has recently held that the right to notice of the State's intent to use prior convictions as enhancements, similar to notice given for deadly weapon allegations, is constitutionally based and that due process does not require that notice of prior convictions be given before the trial on guilt begins.
>
> Regarding the type of notice required to be given, the court of criminal appeals has held that a count in the indictment containing a deadly weapon allegation sufficed to give a defendant notice of the State's intent to seek an affirmative finding of the use of a deadly weapon. Shortly after *[Ex parte] Beck*, the Court reaffirmed its decision in *[Ex parte] Patterson* and held that the State must plead its notice of intent to seek an affirmative finding of the use of a deadly weapon. The Court then held that notice need not be contained in the indictment; rather, a defendant is simply entitled to written notice in some form that the use of a deadly weapon will be a fact issue at trial.
>
> In this case, it is undisputed that the State faxed and Byrd's counsel received two letters regarding the State's notice of intent to seek a deadly weapon finding, the first of which the State sent approximately one month in advance of trial. Also, on the first day of trial, counsel had case law prepared to submit to the trial court

6

specifically addressing the issue of the requirement that the notice of intent be filed with the trial court. Further, Byrd twice admitted to the trial court that he understood the State was alleging that he had committed the offenses with the use of a deadly weapon. Although Byrd argues that, based on the advice of his defense counsel, he "merely agreed" with the trial court that the State intended to prove that he committed the offenses with a deadly weapon because he believed that the State had failed to properly file the notice, the record does not support this claim.

This is not a case in which the defendant learned of the State's intent to seek a deadly weapon "only after all the evidence was in, both sides had closed, and the charge was read to the jury." Defendants, like that in *Patterson,* are in effect "blindsided" because they have "no prior indication that the nature of the weapon used was to be a particular issue in the case." But here, we cannot say that Byrd was blindsided by the deadly weapon special issue in this case because he had more than an "indication" of the State's intent; he had written notice that the State intended to seek a deadly weapon finding approximately one month before trial. And to satisfy the pleading requirement, the State filed the notice with the trial court to support the special issue submitted to the jury.

Byrd's due process claim is also weakened by his failure to ask for a continuance to relieve any surprise or prejudice. Indeed, we find little merit in this due process claim when Byrd, confronted with the issue of the deadly weapon allegation during the trial court's admonishments, could have, but did not, request a continuance. Instead, he admitted that he understood the State was seeking a deadly weapon finding because he knew that the notice, which he received twenty-seven days earlier and on which he had prepared defense, was not filed.

In sum, under the facts of this case, the State's notice faxed to Byrd on February 22, 2007, gave Byrd adequate written notice of its intent to seek a deadly weapon finding. And, Byrd's failure to ask for a continuance defeats any due process claim he might have had. Given these factual circumstances, the timing of the formal filing on the second day of trial did not violate Byrd's right to due process.

Byrd also claims that his due process rights were violated because the State failed to adequately apprise him of the exact nature of the deadly weapon allegation. Citing *Hocutt [v. State],* a prior decision from this court, Byrd contends that because the State did not specify the nature of the deadly weapon in the faxed notices, he reasonably believed that any enhanced punishment he might have received was a result only of his prior convictions. In *Hocutt,* the defendant, charged with driving while intoxicated, caused an accident with another vehicle, resulting in minor injuries to the passengers of both vehicles. The State faxed and filed notice letters three days before trial but did not specify the nature of the deadly weapon, the automobile. We held that the State's notice was inadequate because the State gave written notice only

three days before trial, there were no serious bodily injuries that resulted from the accident, a car is not a deadly weapon per se, and the notice was not specific as to the nature of the deadly weapon. Like in *Hocutt*, there were no injuries resulting from Byrd's use of the vehicle, and the faxed notices did not specify the type of deadly weapon involved. However, unlike in *Hocutt*, Byrd never requested a continuance. As held in *Whately*, when the defendant is not blindsided by the deadly weapon allegation and the defendant fails to request a continuance, there is no fundamental unfairness by failing to specify the type of weapon involved. Thus, because Byrd failed to request a continuance and was not surprised or blindsided by the notice of intent, we hold that Byrd's claim that he was prejudiced by the lack of specificity in the notice must fail.

We do not hold as a general rule that notice formally filed by the State on the second day of trial or lacking specificity as to the type of weapon used is constitutionally adequate. Rather, we hold that Byrd's due process rights were not violated when he received written notice twenty-seven days before trial, which the State eventually filed with the trial court; admitted that he understood that the State was seeking a deadly weapon finding; had a prepared defense ready on the first day of trial concerning the issue of filing the notice as a pleading; and failed to ask for a continuance at any time before or during the trial. . . .

*Byrd*, slip op. at *2-5 (citations omitted).

In turn, the Texas Court of Criminal Appeals denied relief without written order, which was an ajudication on the merits, also rejecting petitioner's claims. Deferring to the state habeas court's factual determinations, which are supported by the record, and its interpretation of state law on the issue, petitioner has not demonstrated the state courts' adjudication of the issue resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. A criminal defendant has a due process right to notice of the charges against him, including notice of sentencing issues such as an intent to seek a deadly weapon finding, so that he can prepare a trial defense. *Ables v. Scott*, 73 F.3d 591, 593 (5th Cir. 1996) (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)); *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir.

1994)). The defense received notice of the intent to seek a deadly weapon finding prior to the beginning of trial. Therefore, as a matter of constitutional due process, the defense received the proper notice, was aware prior to the beginning of trial that the finding would be sought and that the vehicle was the alleged deadly weapon, and was able to respond accordingly. Furthermore, petitioner responded affirmatively during the trial court's admonishments that he understood the state was seeking a deadly weapon finding and that a deadly weapon finding would increase the punishment range for his offenses, and he nevertheless persisted in his plea of guilty. (RR, vol. 2, at 80) It necessarily follows that petitioner's plea was not rendered involuntary on this basis.

### 3. *Ineffective Assistance of Counsel*

Petitioner contends his trial counsel was ineffective by (1) failing to request a continuance to prepare a defense to the state's deadly weapon allegation, (2) failing to instruct the trial court to properly charge the jury on the deadly weapon issue, (3) failing to allow petitioner to testify in his own defense at trial, (4) failing to interview an eyewitness and object to the videotape shown at trial, (5) failing to recuse himself based on a conflict of interest, and (6) advising him to plead guilty when there was no advantage in doing so.

Once a knowing and voluntary guilty plea has been entered by a criminal defendant, all nonjurisdictional defects in the proceedings preceding the plea are waived, including all claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). Therefore, to the extent petitioner complains trial counsel failed to recuse himself, a matter unrelated to the voluntariness of his plea, the claim is nonjurisdictional and is waived by the plea. *See United States v. Broce*, 488 U.S. 563, 573-74 (1989). The remainder of petitioner's claims of

ineffective assistance occurred during the punishment phase of trial and are addressed herein.

To prevail on his ineffective assistance of counsel claim, petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). This standard applies regardless of whether the applicant pleaded guilty or not guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Strickland*, 466 U.S. at 687. Judicial scrutiny of this type of claim must be highly deferential, and a petitioner must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Counsel's decisions regarding trial tactics and strategy cannot support a claim for ineffective assistance of counsel unless "it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotten v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003) (citations omitted). To prove prejudice during the punishment phase of a trial, a petitioner must show there is a reasonable probability that he would have received a "significantly less harsh" sentence. *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005). Further, "[a] court need not address both components of an ineffective assistance of counsel claim if the [petitioner] makes an insufficient showing on one." *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

Petitioner raised his ineffective assistance claims in his state habeas application. Because state habeas relief was denied without opinion, this court will assume that the Texas courts applied a *Strickland* analysis and found either that petitioner's counsel was not deficient or that petitioner was not prejudiced by his counsel's performance. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). Petitioner has presented no evidence in his petition that could lead the court to conclude

that the state courts unreasonably applied the standards set forth in *Strickland* or unreasonably interpreted the facts set forth in the application for state writ.

Petitioner asserts counsel was ineffective by failing to request a continuance. This argument fails because counsel was notified before trial that the state intended to seek a deadly weapon finding and that the stolen motor vehicle was the alleged deadly weapon, and counsel had ample time to, and did, prepare a defense to the allegation. (Clerk's R. at 8-11; RR, vol. 3, at 1-2) Furthermore, as noted by respondent, the state appellate court pointed out that counsel's failure to seek a continuance was one factor in its decision to affirm, the state court held separately that the notice was adequate. (Resp't Ans. at 10) Thus, even if counsel was deficient, petitioner cannot demonstrate prejudice as a result of counsel's failure to request a continuance.

Petitioner claims counsel was ineffective by failing to obtain jury instructions on the deadly weapon issue. Specifically, petitioner asserts counsel should have requested instructions that to sustain a deadly weapon finding under state law there must be evidence others were actually endangered, not merely a hypothetical potential for danger, and that evidence showing an accused merely drove recklessly is insufficient to show he used the vehicle as a deadly weapon. (Pet'r Reply at 17) In a special issue submitted in the jury charge, a "deadly weapon" was defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury," tracking the statutory language. (Clerk's R. at 20) TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2010). Under state law, driving a motor vehicle while legally intoxicated can equate to using the vehicle in a manner capable of causing death or serious bodily injury. *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). This is true even though petitioner may not have intended to use the vehicle as a deadly weapon and even though pedestrians and other motorists

were not physically injured. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Moreover, having reviewed the entire record, there was ample testimony that pedestrians and other motorists were put in actual danger because of petitioner's reckless and dangerous driving. Defense counsel is not deficient in not requesting an instruction to which petitioner was not entitled; nor can petitioner demonstrate prejudice that either instruction would have changed the result on the issue.

Petitioner claims counsel was ineffective by not allowing him to testify on his own behalf at trial. According to petitioner, had the jury heard his version of the events, at least one of the jurors would not have agreed that he used the vehicle as a deadly weapon. (Pet'r Reply at 12) The record reflects petitioner initially intended to testify, but for whatever reason decided not to do so. (RR, vol. 4, at 4) It is well established that a defendant has a constitutional right to testify at his trial in his behalf. *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987). However, a petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney, and the trial court in this instance, that he wished to testify and that his attorney forbade him from taking the witness stand. *See Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991); *Turcios v. Dretke*, No. Civ. A. H-97-0515, slip op. 2005 WL 3263918, at *6-7 (S.D.Tex. Nov. 29, 2005). Outside of petitioner's own statement, there is no evidence in the habeas record to prove his claim that he was denied the right to testify at his trial. Standing alone, such self-serving statements cannot be allowed to succeed or the criminal judicial process would become unworkable. *Id.*

Petitioner claims counsel was ineffective by failing to interview and call Gage Jenkins, an employee of Sonic and an eyewitness to the events in the Sonic parking lot, as a witness and to object to the videotape of the police pursuant because part of the videotape had been edited out. (Pet'r Reply at 13-16 & Ex. A) Petitioner asserts Jenkins was a key eyewitness because his

testimony would have contradicted the testimony of Kristen Thykeson, the manager of Sonic and owner of the stolen vehicle, that petitioner almost hit Thykeson and a customer with the vehicle and would have disproved the contention that he used the vehicle as a deadly weapon. (RR, vol. 2 at 96-97) However, as noted by respondent, Jenkins' testimony would have been relevant only to the initial theft at the Sonic, not the subsequent highspeed police chase through multiple cities. The testimony of law enforcement officers and the videotape of the pursuit were sufficient to prove the deadly weapon allegation. Further, petitioner fails to support his assertion that the videotape was edited to omit a portion showing he was sideswiped by a police car or that, if true, the omitted portion would have been relevant, substantive information in his favor. Instead, the record before this court reflects the state offered the testimony of State Trooper Christopher Hall who authenticated the videotape and testified that the recording had not been tampered or altered with in any way. (RR, vol. 2, at 146-47) Counsel is not required to make frivolous objections. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

Petitioner claims counsel was ineffective by advising him to plead guilty when there was no benefit in doing so. (Pet'r Reply at 19) Having reviewed counsel's opening and closing arguments, it appears counsel's strategy was to persuade the jury that by pleading guilty petitioner was taking responsibility for his actions and that petitioner would benefit from a shorter sentence during which he could be rehabilitated. There is nothing in the record to suggest counsel's advice constituted coercion, and, considering the overwhelming evidence of petitioner's guilt, counsel would have been ill-advised to make any argument other than a plea for leniency.

Having independently reviewed each of petitioner's claims raised in state court in conjunction with the state court records, and assuming the Texas Court of Criminal Appeals applied

*Strickland* in denying relief, it appears the state courts' adjudication of petitioner's ineffective assistance claims was reasonable.

## 4. Trial Court Error

Petitioner claims the trial court erred by not properly instructing the jury on the deadly weapon issue and abused its discretion by permitting introduction of evidence on the issue over defense counsel's objection. (Pet. at 7A - 7B) Based on the foregoing discussion, these claims lack merit.

## II. RECOMMENDATION

Petitioner's petition for writ of habeas corpus should be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until June 13, 2011. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are

14

accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

### IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until June 13, 2011, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 24, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE